SUPERIOR COURT 
 
 MICHAEL D’ACCI, CAROL D’ACCI, ARDON MCCARTHY, JASON MONAST, MELANIE MONAST, LINDA WESTGATE, GARY WESTGATE, BRANDON EMPEY, KRYSTILE EMPEY, and MELISSA BESSEY v. MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION

 
 Docket:
 2384CV00244-C
 
 
 Dates:
 March 21, 2024
 
 
 Present:
 Robert B. Gordon
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PARTIES’ CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS
 
 

             Plaintiffs are a Ten Citizen Group (“Plaintiffs”) who have challenged a final decision of the Office of Appeals and Dispute Resolution of the Massachusetts Department of Environmental Protection (“MassDEP” or the “agency”). The gravamen of Plaintiffs’ action, which they bring pursuant to the appeals provisions of the Commonwealth’s Administrative Procedure Act, G.L. c. 30A, § 14, is the contention that MassDEP improperly dismissed their appeal of the Final Air Quality Plan Approval (the “Air Permit”) that issued to Defendants Lorusso Corporation (“Lorusso”) and Bristol Asphalt Company (“Bristol”) in connection with their proposed construction and operation of an industrial asphalt plant. MassDEP dismissed Plaintiffs’ appeal of the Air Permit on the stated ground (inter alia) that Plaintiffs lacked standing to contest the agency’s failure to take sufficient measures to address the problem of
 
                                                                        -1-
 
odor associated with the approved plant, because Plaintiffs had not raised the particular issue of odor during the public comment phase of the permitting process.
HISTORY OF BRISTOL/LORUSSO’S AIR PERMIT APPLICATION
            In November, 2019, Bristol and Lorusso (the “Applicants”) filed a Non-Major Comprehensive Plan Application to construct and operate an asphalt plant in an industrial zone of Rochester, Massachusetts. The Applicants submitted an Air Quality Modeling Report in support of their application in January, 2021; and on April 27, 2021, MassDEP issued a draft Air Quality Plan Approval for the project and initiated a 30-day public comment period.
            On May 27, 2021, Plaintiffs filed written comments with MassDEP, addressed to the Applicants’ project as provisionally approved by the agency. These comments included letters expressing criticisms of the air modeling performed in support of the proposed plant. In particular, the criticisms cited the Applicants’ failure to “place sensitive receptors at the residential homes which are located adjacent to the edge of” the site for the plant, where “elevated pollutant concentrations” might be. In this same vein, the filed comments criticized the “air emissions modeling conducted by [the Applicants] for failing to assess the “regional impacts the proposed facility would have on abutting property owners.” Nowhere, however, did Plaintiffs’ filed comments raise or address any concerns regarding the matter of odor; and, indeed, the terms “odor,” “smell,” and “olfactory” do not appear anywhere therein.
            On July 28, 2021, in response to Plaintiffs’ filed public comments,[1] MassDEP directed the Applicants to supplement their submission by conducting additional air quality dispersion modeling. The Applicants thereupon conducted the additional air quality dispersion modeling study demanded by the agency, and in August, 2021 filed a revised Air Quality Modeling
 
--------------------------------------------
 
[1] There were no others.
 
                                                                        -2-
 
Report. The revised Report thus submitted addressed the Plaintiffs’ articulated concerns regarding air pollution emissions, but did not address the matter of odor.
            On August 25, 2021, MassDEP issued a memorandum which reviewed and responded to the particular criticisms that had been levelled against the project during the public comment period, and specifically approved the revised emissions modeling that had been carried out by the Applicants. Then, on August 26, 2021, MassDEP issued the Air Permit to the Applicants, effectively green-lighting their construction of the proposed asphalt plant. By this permitting, MassDEP determined that the Applicants’ project was “administratively and technically complete” and “in conformance with the [Air Pollution Control Regulations] and current air pollution control engineering practice.”
PLAINTIFFS’ APPEAL TO MassDEP
            On or about September 15, 2021, Plaintiffs filed a Notice of Claim for an Adjudicatory Hearing (the “Notice of Claim”). In this Notice, Plaintiffs the first time asserted that issuance of the Air Permit was inconsistent with governing air pollution control law and regulations, see
G.L. c. 111, § § 142A-J, because it “fails to adequately assess odor” potentially affecting their residences.
            Following a pre-hearing conference that identified the issues for adjudicative resolution, the Applicants moved to dismiss Plaintiffs’ Notice of Claim. Grounds for this motion included (among others) the contention that, by failing to raise the issue of odor in their public comments, Plaintiffs had waived the issue and were thereby precluded as a matter of standing from arguing it in an adjudicatory hearing pursuant to 310 Code Mass. Regs. § 7.51(1)(i)2. Plaintiffs opposed this motion, maintaining that their broadly worded comments on “air pollutants,” “contaminants”
 
                                                                        -3-
 
and “emissions” sufficiently raised the issue of odor to preserve their right to challenge the Air Permit on this ground.
            On March 1, 2022, the Presiding Officer of the agency provisionally denied the Applicants’ motion to dismiss. The order of denial, however, specifically stated that, “on a more developed record, perhaps with more evidence to support the moving parties’ arguments regarding the applicability of [§] 7.51(1)(i)2 to the facts of this case, a different conclusion may be drawn.”
            Plaintiffs and the Applicants thereupon filed written testimony and memoranda of law with MassDEP. After reviewing these submissions, the agency’s Presiding Officer issued a procedural order on March 18, 2022. In that order, the Presiding Officer directed Plaintiffs to show cause why a decision should not issue recommending that MassDEP’s Commissioner dismiss their appeal and affirm the previously approved Air Permit. In this connection, and as it forecast it might do after reviewing the case on a more developed record, the show cause order expressly stated that “based on the evidence presented by [Plaintiffs,] they do not have a reasonable likelihood of prevailing on their claim of standing to bring this appeal ….”
            On April 5, 2022, Plaintiffs responded to the show cause order, renewing the contention that, regardless of the vocabulary used, their public comments did adequately raise the issue of odor. On December 16, 2022, the Presiding Officer issued a Recommended Final Decision, recommending to MassDEP’s Commissioner that Plaintiffs’ appeal be dismissed and the Applicants’ Air Permit affirmed. In support of this recommendation, the Presiding Officer found that because Plaintiffs’ “detailed comments on the air dispersion modeling” performed by the
 
                                                                        -4-
 
Applicants “never mentioned odor,” Plaintiffs “cannot raise these concerns now and therefore … have not sustained their claim of a right to appeal.”[2]
            On December 28, MassDEP’s Commissioner issued a final decision, adopting the Recommended Final Decision of the Presiding Officer. Plaintiffs timely commenced the present
c. 30A appeal of this final agency action on January 27, 2023; and the parties have filed cross- motions for judgment on the pleadings in accordance with Superior Court Administrative Directive 1-96.
DISCUSSION
I. STANDARD OF REVIEW
            In reviewing an agency’s decision pursuant to G.L. c. 30A, § 14(7), the Court will uphold the decision “unless it is based on an error of law, unsupported by substantial evidence, unwarranted by facts found on the record as submitted, arbitrary [or] capricious, an abuse of discretion, or otherwise not in accordance with law.” Energy Express, Inc. v. Department of Pub.
Utils., 477 Mass. 571, 575 (2017) (alteration in original) (citations omitted).
            Chapter 30A review is “highly deferential,” and the Court must accord “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Flint v. Commissioner of Pub. Welfare, 412 Mass.
416, 420 (1992), quoting G.L. c. 30A, § 14 (7). In particular, a reviewing court must accord “substantial deference” to an agency’s interpretation of the statutes and regulations it enforces. See City Council of Agawam v. EFSB, 437 Mass. 821, 828 (2002); Navy Yard Four Assocs. v.
Department of Envt. Prot., 88 Mass. App. Ct. 213, 223 (2015). This required deference means
 
--------------------------------------------
 
[2] The Presiding Officer additionally concluded that, on the merits, Plaintiffs had failed to present “sufficient evidence that the Air Permit as conditioned did not comply with the requirements of 310 CMR 7.00.” This independent determination by the Presiding Officer is not implicated in the Court’s present decision, and the undersigned expresses no view regarding same.
 
                                                                        -5-
 
that courts will “not intrude lightly within the agency’s area of expertise.” Friends & Fishers of Edgartown Great Pond, Inc. v. Department of Env’t. Prot., 446 Mass. 830, 837 (2006). Review is
 
confined to the administrative record, G.L. c. 30A, § 14(5), and a party challenging an agency’s administrative decision bears a “heavy” burden to demonstrate its invalidity. Box Pond Ass’n v.
EFSB, 435 Mass. 408, 412 (2001).
            II.        MassDEP’S DISMISSAL OF PLAINTIFFS’ APPEAL
            Plaintiffs’ sole challenge to MassDEP’s Air Permit is the contention that the agency failed to require sufficient measures from the Applicants to address concerns regarding potential odor expected from the asphalt plant. This is a challenge, however, that they did not convey in their public comments during the permitting process, and instead advance for the first time on appeal. See ante. This is improper, as MassDEP correctly concluded.
            MassDEP’s appeal regulations, codified at 310 Code Mass. Regs. § 7.51, prescribe the procedures for seeking review of an air permit decision through adjudicatory hearing. These regulations provide in pertinent part that:
“1. The issues that may be raised in a request for an adjudicatory hearing are limited to the subject matter of the Department’s decision.
2. If the Department provided a public comment period,
the issues that may be raised in a request for an adjudicatory hearing are further limited to the matters raised during the public comment period; provided, however, that a matter
may be raised upon showing that it was not reasonably possible with due diligence to have raised such matter during the public comment period or for good cause shown.”
310 Code Mass. Regs. § 7.51(1)(i)2. The appeal regulations further provide that “[f]ailure by an aggrieved person or ten persons group to submit written comments as provided herein shall result in the waiver of any right to request an adjudicatory hearing.” 310 Code Mass. Regs. §
 
                                                                        -6-
 
7.51(1)(d).
            In the case at bar, MassDEP’s provisional and final Air Permit decisions nowhere addressed the “subject matter” of odor from the Applicants’ proposed asphalt plant, because odor had never been the subject of public comment from any quarter during the permitting process. Odor is defined in MassDEP’s regulations as “that property of gaseous, liquid, or solid materials that elicits a physiologic response by the human sense of smell.” 310 Code Mass. Regs. § 7.00. Because the subject matter of odor so defined formed no part of MassDEP’s decision to issue the Air Permit, odor could not properly form part of Plaintiffs’ request for an adjudicatory hearing, as the agency’s Commissioner recognized below. See 310 Code Mass. Regs. § 7.51(1)(i)1 (“The issues that may be raised in a request for an adjudicatory hearing are limited to the subject matter of the Department’s decision.”).
            Relatedly, the record reflects that at no time during the Air Permit’s public comment period did Plaintiffs “raise the issue” of odor from the proposed asphalt plant. Such failure likewise operated to bar Plaintiffs from surfacing concerns about odor for the first time in their Notice of Claim requesting an adjudicatory hearing, a waiver once again properly recognized by MassDEP’s Commissioner below. See 310 Code Mass. Regs. §§ 7.51(1)(i)2 (“If the Department
provided a public comment period, the issues that may be raised in a request for an adjudicatory hearing are further limited to the matters raised during the public comment period.”); 7.51(1)(d) (“Failure by an aggrieved person or ten persons group to submit written comments as provided herein shall result in the waiver of any right to request an adjudicatory hearing.”).[3]
--------------------------------------------
 
[3] In the memorandum of law advancing their c. 30A challenge in this Court, Plaintiffs do not contend that it was somehow “impossible” for them to have raised the issue of odor in their public comments about the Air Permit; nor do Plaintiffs argue that some other “good cause” excuses their failure to do so. 310 Code Mass. Regs. § 7.51(1)(i)2. These regulatory exits from the issue-preservation highway have not been taken by Plaintiffs in their present appeal, Plaintiffs instead insisting they did raise the issue of odor before the agency below.
 
                                                                        -7-
 
            In their c. 30A appeal to this Court, Plaintiffs maintain that they sufficiently raised the issue of odor in their public comments regarding the Air Permit, inasmuch as such comments registered criticisms addressed to the proposed plant’s “emissions.” Massachusetts environmental regulations define an “emission” as “any discharge of an air contaminant in the ambient air space;” and “air contaminant,” in turn, is defined to mean “any substance or man- made physical phenomenon in the ambient air space and includes, but is not limited to, dust, flyash, gas, fumes, mist, odor, smoke, vapor” and other matters. 310 Code Mass. Regs. § 7.00 (emphasis added). Thus, the argument goes, because Plaintiffs’ written comments referenced concerns related to “emissions,” they necessarily raised concerns about odor. The Court does not agree.
            Although Plaintiffs’ argument has surface appeal, its upside-down logic ultimately proves too much. It may be true that a challenge addressed to odor is definitionally a challenge to a type of emission, because the environmental regulations define “emission” to “include” odor. See ante. But it is plainly not the case that any challenge to an emission is, perforce, a challenge based on odor. Emissions may involve odors because odors are one of the specifically enumerated phenomena that fall within the inclusionary definition of an emission; but the obverse is not true, because not all emissions are necessarily odors.[4]
            The flaw in Plaintiffs’ reasoning is more readily revealed by a simple review of what in fact occurred in this case. Although Plaintiffs’ public comments did reference “emissions,” they did so in the context of criticizing the Applicants’ air dispersion modeling. No mention of any kind was made of odor, and it would have required speculation of an expansive kind to infer that odor in particular (or dust, flyash, fumes, mist, smoke, vapor or, for that matter, any of the other
 
--------------------------------------------
 
[4] Children taught phylogeny learn this at a young age. All human beings are mammals, but not all mammals are human beings.
 
                                                                        -8-
 
substances comprising the range of potential emissions specified in this term’s definition) was the subject of Plaintiffs’ concern. For this reason, MassDEP responded to Plaintiffs’ comments by requiring the Applicants to conduct further air quality modeling with additional receptors and other controls; and the Applicants complied by carrying out such a study and submitting another report documenting same. No odor-related study was requested by the agency or commissioned by the permit-seekers, because no concerns about odor had ever been articulated with any particularity during the public comment period. In these circumstances, it turns logic on its head, and mocks the very notice purpose of MassDEP’s appeal regulations, to argue (as Plaintiffs do) that a generic reference to “emissions” in their otherwise detailed public comments raised the issue of odor to the agency. It did not, at least if “raise the issue” is to be accorded any rational meaning under the regulations.
            As MassDEP’s Presiding Officer reasonably concluded in the Recommended Final Decision: “[Plaintiffs’] comments on the air dispersion modeling were detailed and specific. There was no suggestion in their comments that the draft permit failed to adequately address odor.” Wholly apart from the substantial deference owed to MassDEP’s construction of its own appeal regulations in this case, see supra, the agency’s conclusion that Plaintiffs failed to raise
the issue of odor with sufficient clarity and specificity – and MassDEP thus did not address it during the project’s permitting process or in its approval paperwork – seems unassailably correct.
            It bears note that the Court’s common-sense reading of the law in this case does not spring some overly persnickety trap on the unwary. To the contrary, Plaintiffs’ waiver of the odor issue below (and their belated attempt to raise the issue in a challenge to the Air Permit after its final issuance) reflects a clear failure to allow the permitting process to unfold in the fair and orderly manner contemplated by the regulations. This is an important point MassDEP
 
                                                                        -9-
 
emphasizes in its memorandum, and it resonates with the undersigned. Because 310 Code Mass. Regs. § 7.51 was adopted in 2018, no Massachusetts court has yet had occasion to interpret the agency’s appeal regulations. But the Court takes judicial notice that these provisions were modeled on cognate federal regulations promulgated by the U.S. Environmental Protection Agency’s Environmental Appeals Board (“EAB”). The EAB, applying a regulatory scheme very similar to MassDEP’s, has held that “issues must be raised with a reasonable degree of specificity and clarity during the comment period in order for the issue to be preserved for review.” In re Steel Dynamics, Inc., 9 EAD 165, 230-31 (EAB 2000). The intent of this rule, and
MassDEP’s, is unmistakably clear: “The effective, efficient, and predictable administration of the permitting process demands that the permit issuer be given the opportunity to address potential problems with draft permits before they become final.” In re Encogen, 8 EAD 244, 250
(EAB 1999). Applying these principles to the case at bar, and adopting them in its own construction of 310 Code Mass. Regs. § 7.51, the Court concludes that MassDEP supportably interpreted its appeal regulations to find that Plaintiffs had not sufficiently raised the issue of odor before the agency to avoid the waiver of such issue in their appeal of the Air Permit.
CONCLUSION AND ORDER
            For all the foregoing reasons, the Plaintiffs’ Motion for Judgment on the Pleadings is DENIED; the Defendants’ Cross-Motion for Judgment on the Pleadings is ALLOWED; and the decision of MassDEP dismissing the appeal of the Air Permit issued to Lorusso Corporation and Bristol Asphalt Company is AFFIRMED.
SO ORDERED.